**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE FLORES,<br><br>          Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>          Defendant. | Civil Action No. 14-7146 (JLL)<br><br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Jose Flores ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Hon. Hilton R. Miller denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decision of the Commissioner is affirmed.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed applications for DIB and SSI on November 8, 2011, due to alleged back problems and pain in his left shoulder, alleging disability as of November 1, 2007. (R.[1] at 257-68,

---

[1] "R." refers to the Administrative Record, which uses continues pagination and can be found at ECF No. 6.

317.)  After his applications were denied at the initial, administrative level on December 23, 2011 (R. 82-87) and upon reconsideration on March 2, 2012 (R. 88-90), Plaintiff requested an administrative hearing on March 13, 2012 (R. 91).  A hearing took place on September 6, 2012 before the ALJ but was adjourned when Plaintiff stated that he wished to retain counsel.  (R. 37-42.)  On April 9, 2013, the ALJ held another hearing during which Plaintiff was represented by counsel.  (R. 43-69.)  On April 19, 2013, the ALJ issued a decision denying Plaintiff's applications, finding that Plaintiff was not disabled during the relevant time period.  (R. 14-23.)  Plaintiff requested review of the ALJ's decision by the Appeals Council on May 29, 2013.  (R. at 6-7.)  On September 12, 2014, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. (R. at 1-5.)  Plaintiff then commenced the instant action on November 1, 2014, pursuant to 42 U.S.C. §§ 405(g) and/or 1383(c).  (ECF No. 1 ("Compl.") at 1.)  Both parties filed briefs in accordance with Local Civil Rule 9.1.  (ECF No. 9, Brief in Support of Plaintiff Jose Flores ("Pl. Br."); ECF No. 15, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Br.").)  The matter is now ripe for resolution.

### B.    Factual History

#### 1. Plaintiff's Testimony

Plaintiff gave testimony before the ALJ on April 9, 2013 in Jersey City, New Jersey.  (R. at 43-69.)  Plaintiff testified that he cannot work due to "pain all over his body."  (R. 46.)  He testified that he had a prior operation and that his "legs fall asleep" and that he "falls often" and that he "forget[s] things."  (R. 46.)  Plaintiff further testified that he does not see a doctor and that he had not seen one since approximately one and half years prior to the hearing date.  (R. 55.)

According to Plaintiff's testimony, he was 45 years old on the date of the hearing, he did not go to school, he could not read or write in Spanish or in English, but that he could understand a little bit of English.  (R. 47.)  Plaintiff further testified that he was originally from El Salvador but had been a resident for ten years.  (R. 48.)  Plaintiff testified that he lives with his wife and that he does not drive due to a suspended license caused by an "error."  (R. 52-53.)

Plaintiff testified that the last time he worked was one and a half to two years prior to the hearing date, when he had worked for six months at a car wash drying cars.  (R. 48.)  Plaintiff testified that prior to working at the car wash, he changed car tires for about eight months, where he would lift forty-five pounds.  (R. 48-49.)  He further testified that prior to changing car tires, he loaded trucks with merchandise, where he also lifted forty-five pounds.  (R. 49.)  Plaintiff also testified that prior to loading trucks, he worked at a company called United where he cut garments while standing, and also transported rolls of garments weighing about 150 pounds in a wheel barrow.  (R. 49-50.)  He further testified that prior to that, there were a few jobs he could not remember because he was only employed in them for a short period of time.  (R. 50.)  In response to questioning from his attorney, Plaintiff testified that he was working in 2009,[2] that he was laid off, that he went back to work on light duty, and that "something happened" and then he left the job, but he did not remember exactly.  (R. 55-56.)

Plaintiff testified that he has "a lot of pain" in his back, in his neck, and on his left side and that his legs fall asleep.  (R. 50.)  He testified that he can sit for 20 minutes at a time, and that he can stand and walk for an hour at a time, but that after standing for an hour he has to either sit down or lay down and that he lays down five or six times a day.  (R. 50-51, 54.)  However, Plaintiff also testified that he could stand for half an hour only.  (R. 55.)  Plaintiff further testified that he

---

[2] At Zap Lube as a car washer, according to a Work Activity Report submitted by Plaintiff.  (R. 31.)

loses strength in his legs and that his hand and arm fall asleep.  (R. 51.)  He testified that he has difficulty raising his left arm, that he could lift it straight up, but that he feels pain when he uses the muscle.  (R. 52.)  Plaintiff testified that he could lift ten pounds, but that he could not lift things in front of him on a regular basis because sitting down "give[s] him problem" and "he can't stand and do stuff [i]n front of him."  (R. 52, 54.)  He also testified that he does not have pain in his neck, but that when he did have pain in his neck it went to his hands.  (R. 54.)  Plaintiff testified that he had difficulty putting on his socks or taking a shower.  (R. 55.)  According to Plaintiff, he has difficulty concentrating, he forgets things, and he gets a headache approximately once per week.  (R. 53.)

        2. Medical Evidence

        The Record contains twenty-four pages of medical evidence.  (R. 348-71.)  According to the record, on July 31, 2007, Plaintiff injured his left shoulder and lower back after losing his balance at work while carrying a 150-pound tire.  (R. 352.)  A resulting MRI showed that Plaintiff had "mild" hypertrophy of the acromioclavicular capsule (without impingement), "mild" tendinosis of the supraspinatus and infraspinatus tendons, no rotator cuff tears, and a "small amount of fluid" in the subacromial-subdeltoid bursa.  (R. 348.)

        On December 6, 2011, Dr. Hilary B. Kern reported that Plaintiff alleged pain in his lower back, neck, and legs, but that there were some improvements in the pain and that he took Tylenol as needed.  (R. 352-53.)  The report from Dr. Kern also states that Plaintiff underwent left shoulder surgery in February 2008 involving arthroscopic subacromial decompression and labral debridement secondary to SLAP-1 tear and degenerative tear of the labrum.  (R. 352.)  Plaintiff reported to Dr. Kern that he "left [his job in 2009] for reasons aside from his pain complaints." (R. 353.)  According the report, Plaintiff has lifting restrictions less than or equal to 20 pounds.

4

(R. 353.)  Plaintiff was alert and well-oriented and he performed squats, exhibited an intact heel and toe gait, walked at a reasonable pace, and got on and off the examining table and in and out of a chair with only "mild-to-moderate distress."  (R. 353.)  The report states that Plaintiff demonstrated a "mild" decrease in his cervical and lumbosacral range of motion and was negative upon Spurling testing as well as in straight leg raises in both lower extremities. (R. 353-54.)  An examination of Plaintiff's left shoulder revealed full range of motion, no tenderness along the AC joint, a "mild" shoulder impingement, no muscle atrophy, and Plaintiff experienced no hip tenderness and exhibited full range of motion bilaterally.  (R. 353-54.)  And according to neurological examination, Plaintiff showed 4-5/5 motor strength. (R. 354.)  Additionally, X-rays of Plaintiff's lumbosacral spine revealed an intact lumbar spine, with "minimal" osteophyte formation, and "mild" anomalous development of L5. (R. 358.)  There was no evidence of fracture or bone lesion.  (R. 358.)   Dr. Kern assessed Plaintiff with rule out cervical disc herniation, bilateral cervical left upper trapezius sprain, and status-post arthroscopic decompression of the left shoulder.  (R. 354.)

On October 9, 2012, Plaintiff saw Dr. Kern for a second time.  (R. 360-64.)  Plaintiff had not sought any treatment in the interim.  (R. 360.)  Plaintiff reported "intermittent" neck pain, central back pain, and "significantly decreased" pain in his left shoulder, which only grew worse when he lay down on his left side. (R. 360.)  Plaintiff reported once again that he took only Tylenol or Advil as needed for his symptoms. (R. 360.)  Plaintiff also reported once again that he left his job in 2009 for reasons other than his pain complaints. (R. 361.)  According to the report, Plaintiff was alert, well-oriented, and exhibited no pain complaints. (R. 361.)  He sat "comfortably" in the exam chair, transferred without difficulty, demonstrated a normal gait, and was able to perform full squats. (R. 361.)  Although he alleged experiencing "mild" pain upon cervical extension,

5

Plaintiff's lumbosacral spine was entirely without pain, and he tested negative in straight leg raises for both lower extremities. (R. 361.) Additionally, bilateral hips were without pain and exhibited full range of motion. (R. 361.) Plaintiff reported some decreased sensation on his left side, but he had no muscle atrophy, and demonstrated full motor strength (5/5) in all upper and lower extremities. (R. 361.) Additionally, Plaintiff possessed full range of motion in his left shoulder without significant pain and his rotator cuff musculature was 5/5 bilaterally. (R. 361.) Dr. Kern diagnosed Plaintiff with L4-5 and L5-S1 herniation, but noted "[n]o clear objective evidence of lumbosacral radiculopathy." (R. 362.) Dr. Kern further reported as follows:

> [Plaintiff] does not represent to have significant functional deficits. He is able to perform a full squat. No evidence of gait antalgia. Full range of motion of the lumbosacral spine. He can stand and walk for prolonged periods. Sitting tolerance greater than or equal to 2 hours, standing and walking tolerance at minimum 1 hour. He is able to perform forward spine flexion and squatting though I would limit repetitive forward flexion and squatting. Lifting should be limited to less than or equal to 40 pounds on a frequent basis and less than or equal to 60 pounds on an occasional basis.

(Tr. 362.) Additionally, Dr. Kern found that Plaintiff could: continuously lift/carry up to 20 pounds, frequently lift/carry 21 to 50 pounds, and occasionally lift/carry 51 to 100 pounds; sit for up to 4 hours during an 8-hour workday, and stand/walk for up to 2 hours; continuously reach, handle, finger, feel, push/pull in both upper extremities, (save for frequent overhead reaching for to the left upper extremity); continuously operate foot controls for both lower extremities; and frequently climb stairs/ramps, balance, stoop, kneel, crouch, and crawl, but only occasionally climb ladders/scaffolds. (R. 365-71.)

## II.    STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be less than a

preponderance." *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered substantial. For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (citing *Hunter Douglas, Inc. v. Nat'l Labor Relations Bd.*, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" *Id.* (citing *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)).

A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler,* 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court cannot determine whether the evidence was discredited or simply ignored. *See Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

## III.   APPLICABLE LAW

### A.   The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. § 416.920. The claimant bears the burden of establishing the first two requirements. The claimant must establish that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. § 416.920(a)(4)(i)-(ii). If a claimant fails to demonstrate either of these

two requirements, DIBs are denied and the inquiry ends. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs. *Id.* If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. §416.920(a)(4)(iv). If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. *Id.* If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. *Yuckert*, 482 U.S. at 146 n.5.

**B.     The Requirement of Objective Evidence**

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." *Id.* Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. *Id.* The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

The list of "acceptable medical sources to establish whether [a claimant] has a medically determinable impairment" includes licensed physicians, but does not include nurses. 20 C.F.R. § 404.1513(a). Though the ALJ "may also use evidence from other sources to show the severity of [a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" and does not need to be given the same weight as evidence from acceptable medical sources. 20 C.F.R § 404.1513(d)(1); *Hatton v. Comm'r of Soc. Sec.*, 131 Fed. Appx. 877, 878 (3d Cir. 2005). Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

10

## IV.    DISCUSSION

On April 19, 2013, the ALJ issued a decision denying Plaintiff's applications, finding that Plaintiff was not disabled during the relevant time period.  (R. 14-23.)    At step two, the ALJ determined that Plaintiff had the following severe impairments: status post left shoulder arthroscopic subacromial decompression and lumbar spine degenerative disc disease.  (R. 17.)  At step three, the ALJ determined that Plaintiff did not have an impairment (or combination of impairments) that met or medically equaled the severity of a listed impairment.  (R. 17.)  Before proceeding to step four, the ALJ formulated Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can frequently climb ramps and stairs, and occasionally climb ladders, ropes and scaffolds. He can occasionally reach overhead, and frequently reach in all other directions, utilizing the left upper extremity. The claimant must avoid vibrations, and can frequently balance, stoop, kneel, crouch, and crawl. He is limited to work not involving more than occasional exposure to hazards, moving machinery, heights, temperature extremes, and wetness.

(R. 17-21.)  At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a production assembler, as it is performed in the national economy, noting that Plaintiff had performed this work during his alleged period of disability.  (R. 21.)  The ALJ nevertheless continued to step five and made an alternative finding that Plaintiff was also capable of making a vocational adjustment to unskilled jobs that exist in significant number in the national economy; namely, a linen room attendant (DOT No. 222.387-030), hospital cleaner (DOT No. 323.687-010), and laundry worker (DOT No. 361.684-014). (R. 21-22.)  Accordingly, the ALJ concluded that Plaintiff did not meet the standard for disability under the Act during the relevant period.  (R. 22.)

Plaintiff argues that the ALJ's RFC determination is not based on substantial evidence (Pl. Br. at 14-18) and that the pain evaluation does not comply with the Commissioner's mandated

analysis (*id.* at 18-22).  Plaintiff first requests that the Court reverse the Commissioner's final administrative decision and order the payment of benefits.  (*Id.* at 9.)  Alternatively, Plaintiff requests that the Court remand the ALJ's decision and order a new hearing and a new decision. (*Id.*)  Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff could perform a limited range of medium work (Def. Br. at 10-13) and that substantial evidence supports the ALJ's credibility analysis because Plaintiff's subjective accounts of debilitating pain are unsupported by the objective medical evidence (*id.* at 13-17).

### A.    There is Substantial Evidence in the Record to Uphold the ALJ's Residual Functional Capacity Assessment.

Plaintiff claims that the medical evidence does not support a medium work RFC and that the ALJ's decision either omits or rejects all evidence which contradicts the medium RFC.  (Pl. Br. at 14-18.)  The Court finds that there is substantial evidence in the record to support the ALJ's assessment of Plaintiff's RFC.

The RFC refers to the most a claimant can do despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *SSR* 96-8p, 1996 WL 374184, at *1-2.  When determining the RFC of a claimant, the ALJ has a duty to consider all evidence before him, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), but the ALJ is only required to include a claimant's "credibly-established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  Thus, a conclusion will be supported by substantial evidence when it considers obviously probative evidence. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979).  Furthermore, the ALJ has the exclusive, final responsibility of determining a claimant's RFC based on the medical evidence.  20 C.F.R. §§ 404.1527(d), .1546(c), 416.927(d); .946(c); *SSR* 96-5p, 1996 WL 374183; *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011).

Here, the ALJ appropriately considered all of the medical evidence and found Plaintiff's RFC to be medium work, subject to numerous postural and environmental limitations. (R. 17-21.) The ALJ extensively discussed the record medical evidence before him. For example, the ALJ noted that an MRI of Plaintiff's left shoulder conducted in August 2007—a month after he sustained injury—revealed "mild hypertrophy of the acromioclavicular capsule without impingement, mild tendinosis of the supraspinatus and infraspinatus tendons of the rotator cuff, with no rotator cuff seen, and a small amount of fluid in the subacromial-subdeltoid bursa." (R. 19 (citing Ex. 1F).) Additionally, the ALJ discussed in detail the records resulting from the two visits to Dr. Kern, and ultimately concluded that Plaintiff's RFC was more restrictive than that offered by Dr. Kern: "While [Dr. Kern's] opinion reflects the claimant's significantly improved left shoulder symptoms, it does not adequately consider his current subjective complaints of intermittent neck and left shoulder pain." (R. 19.) Indeed, whereas Dr. Kern indicated that Plaintiff could perform "frequent" reaching, the ALJ concluded that Plaintiff was limited to "occasional" overhead reaching. (R. 17, 19.) The RFC formulated by the ALJ is consistent with the medical evidence and takes into account Plaintiff's credibly-established limitations. The Court finds that the ALJ's RFC determination is supported by substantial evidence.

### B.   There is Substantial Evidence in the Record to Uphold the ALJ's Credibility Analysis.

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective complaints of pain without properly explaining his rationale for doing so, and that the medical evidence supports Plaintiff's subjective statements. (Pl. Br. at 18-22.) The Court disagrees and finds that the ALJ properly considered the subjective complaints of pain, and that substantial evidence supports the ALJ's decision.

A claimant's own description of his impairment and symptoms, standing alone, is not enough to establish disability. 20 C.F.R. §§ 404.1528(a), .1529(a), 416.928(a); *see also Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x. 196, 199 (3d Cir. 2008). Instead, the ALJ must consider "all of the available evidence" when evaluating the intensity and persistence of a claimant's symptoms, including objective medical evidence and a claimant's statements about his symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."). Inconsistencies between a claimant's statements and the medical evidence must be explored; subjective statements of pain must be consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Furthermore, the Court notes that credibility findings as to a claimant's testimony regarding his pain and other symptoms fall exclusively to the ALJ, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and are "virtually unreviewable on appeal." *Bieber v. Dep't. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

Here, the ALJ appropriately considered the medical evidence when concluding that Plaintiff's subjective statements were not entirely credible. For example, Plaintiff initially indicated that he experienced "pain all over his body." (R. 46.) This statement is clearly undermined by the medical records from Dr. Kern, which show that Plaintiff was able to perform squats, walk normally and at a reasonable pace without any assistive device, possessed full motor strength in all of his extremities, had a full range of motion in his hips without pain, and that he performed his daily living activities independently. (R. 19-20, 354, 358, 361-62.) Furthermore, Dr. Kern concluded that Plaintiff could "stand and walk for prolonged periods" and that he possessed a sitting tolerance of at least two hours. (R. 362.) This directly contradicts Plaintiff's

statements that he can sit for 20 minutes at a time, and that he can stand for half an hour only.  (R. 50, 55.)  Additionally, Plaintiff reported to Dr. Kern in October 2012 that his left shoulder pain had "significantly decreased" and that it worsened only when he was lying on his left side.  (R. 360.)   In sum, the Court finds that substantial evidence supports the ALJ's credibility determinations and his determination that Plaintiff is not disabled within the meaning of the Act.

## V.    CONCLUSION

For the foregoing reasons, the decisions of the Commissioner and the ALJ are affirmed. An appropriate order follows this Opinion.

DATED: 9/14/15

JOSE L. LINARES
U.S. DISTRICT JUDGE